# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and
Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

June 28, 2026

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *United States v. Alex Ricaurte Cruz*, 23-CR-159 (NRM)

**"Required wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans."**

***United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010).**

Dear Judge Morrison:

Defense counsel respectfully moves to remove the curfew and location monitoring conditions previously ordered as conditions of Mr. Cruz's pretrial release. 18 U.S.C. § 3142(c)(3) ("The judicial officer may at any time amend the order to impose additional or different conditions of release."). Defense counsel agreed to these conditions at Mr. Cruz's arraignment on April 11, 2023, as part of a consent bail package agreed to by the parties. Pretrial Services objects to the removal of the location monitoring condition because "[h]e is a mandatory Adam Walsh case" and "there's no change in circumstance." Government counsel agrees with Pretrial Services.

These conditions, which are mandatorily required by the Adam Walsh Act, are facially unconstitutional under the due process clause of the Fifth Amendment, the excessive bail clause of the Eighth Amendment, and the separation of powers doctrine because they strip courts of the power to fashion individualized conditions of release based on the unique characteristics of each defendant and case. *United States v. Arzberger*, 592 F. Supp. 2d 590 (S.D.N.Y. 2008); *United States v. Karper*, 847 F. Supp. 2d 350 (N.D.N.Y. 2011). Further, because an individualized assessment of Mr. Cruz's personal history; his lack of any prior criminal history; his lack of any mental health, physical health, or substance abuse problems; his demonstrated compliance with all conditions of release for over three years, including location monitoring and curfew; and the exclusively online nature of the pending allegations against him reveals that these conditions exceed what is reasonably necessary under the

1

Bail Reform Act, the curfew and electronic monitoring conditions are also unconstitutional as applied to Mr. Cruz under both the Fifth and Eighth Amendments.

For the reasons detailed below, the Court should remove the curfew and electronic monitoring conditions previously imposed.

## I.    Background

Mr. Cruz is charged with sexual exploitation of a child and attempted sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). These charges are based on alleged online communications with minors between November 2019 and January 2021 soliciting explicit photographs. The government does not allege Mr. Cruz has ever engaged in hands-on contact, made arrangements to meet up with any minors, or traveled anywhere to engage in the charged conduct.

Mr. Cruz was ordered released at his arraignment on the indictment on April 13, 2023, pursuant to a joint bail proposal of a $50,000 personal appearance bond, co-signed by two sureties, and subject to fourteen conditions of pretrial release. *See* Exh. A, Release Order. Those conditions included that Mr. Cruz be subject to electronic monitoring and a curfew as directed by Pretrial Services. The magistrate judge did not hold an adversarial hearing and did not receive argument from the parties regarding any of the conditions stipulated to by the parties.

Mr. Cruz has now lived with a curfew and electronic monitoring for over three years. During that time, he has continued to live with and care for his two sons, work as a porter and handyman, and help care for his mother, who suffers from dementia. Shortly following his release on bond, he participated in a mental health evaluation by Pretrial Services provider Jennifer McCarthy, who determined he did not need mental health treatment. Mr. Cruz had no prior criminal history before his arrest in this case and he has not sustained any arrests or convictions since the inception of this case.[1]

For family birthday parties and holidays, Mr. Cruz has submitted requests to the Court for permission to extend his curfew. *See, e.g.*, *United States v. Cruz*, Dkt. No. 16 (June 30, 2023); Dkt. No. 17 (Aug. 4, 2023); Dkt. No. 20 (Sept. 1, 2023); Dkt. No. 23 (Nov. 3, 2023); Dkt. No. 24 (Nov. 20, 2023); Dkt. No. 25 (Dec. 28, 2023); Dkt. No. 28 (May 3, 2024); Dkt. No. 31 (Nov. 22, 2024); Dkt. No. 32 (Dec. 23, 2024); Dkt. No. 34 (Apr. 8, 2025); Dkt. No. 37 (Aug. 26, 2025); Dkt. No. 39 (Sept. 25, 2025); Dkt. No. 58 (May 21, 2025). He has diligently followed the restrictions imposed by the Court, and on some occasions has decided not to attend events with his family and friends due to his curfew and the added burden of requesting permission to extend the curfew.

---

[1] Mr. Cruz received one ticket for an open container. He promptly notified his Pretrial Services Officer and paid the fine.

II.     **Argument**

A.  **The Adam Walsh Act Amendments violate the Due Process Clause of the Fifth Amendment.**

i.  **The Adam Walsh Act Amendments to the Bail Reform Act are facially unconstitutional because they require mandatory conditions and strip the court of discretion to fashion individualized pretrial release conditions, in violation of Mr. Cruz's procedural due process rights.**

On July 27, 2006, Congress enacted the Adam Walsh Amendments, H.R. 4472, Pub. L. No. 109-248, which amended the Bail Reform Act of 1984. The provision in question, 18 U.S.C. § 3142(c)(1)(B), now provides that "[i]n any case that involves a minor victim under Section… 2251 "any release order **shall** contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii)." 18 U.S.C. § 3142(c)(1)(B) (2006) (as amended) (emphasis added). The conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii) are:

(iv) abide by specified restrictions on personal associations, place of abode, or travel;

(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii) comply with a specified curfew; and

(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon.

18 U.S.C. § 3142(c)(1)(B).

By mandating that every arrestee charged with certain offenses be subject to the same conditions of release, regardless of their personal history or the circumstances of the offense, "the [Adam Walsh Act] Amendments strip away any independent judicial evaluation." *United States v. Torres*, 566 F. Supp. 2d 591, 596 (W.D. Tex. 2008). Numerous courts have found that procedural due process requires more. *See id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976); *United States v. Salerno,* 481 U.S. 739, 745 (1987)); *United States v. Arzberger*, 592 F.Supp.2d 590 (S.D.N.Y. 2008) (facially unconstitutional under Due Process Clause); *United States v. Karper*, 847 F.Supp.2d 350 (N.D.N.Y. 2011) (facially unconstitutional under Due Process Clause and unconstitutional as applied to defendant under both Due Process Clause and Eighth Amendment's Excessive Bail Clause); *United States v. Crowell*, 2006 WL 3541736 (W.D.N.Y. 2006); *United States v. Vujnovich*, 2007 WL 4125901 (D. Kan. 2007); *United States v. Rogers*, Case No. 18-10018-01-EFM, ECF No. 80 (D. Kan. April 5, 2019); *United States v. Deppish*, Case No. 13-40070-01-JAR, ECF No. 35 (D. Kan. Dec. 5, 2013).

The Due Process Clause of the Fifth Amendment provides that the government shall not deprive a person of "life, liberty, or property without due process of law." U.S. Const., amend. V. The

3

process due in a given situation is determined by weighing "the private interest that will be affected by the official action" against the "government's asserted interest, 'including the function involved' and the burdens the government would face in providing greater process." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

This inquiry involves a two-step analysis. First, the Court determines whether a protected liberty or property interest exists. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The court must then determine whether the procedures attendant to the deprivation of that interest are constitutionally sufficient. *Id.*

> a. <u>The right to free movement and the presumption of innocence are significant liberty interests.</u>

The Adam Walsh Act Amendments to the Bail Reform Act implicate two important liberty interests: the right to free movement and the presumption of innocence. "[T]he term 'liberty] in the Due Process Clause extends beyond freedom from physical restraint… [T]he interest denominated as a 'liberty' [must not only] be 'fundamental' but also… and interest traditionally protected by our society." *Michael H. v. Gerald D.*, 491 U.S. 110, 121-22 (1989) (internal quotations and citations omitted).

The liberty interest in free movement is significant. "[A]n individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution." *United States v. Torres*, 566 F. Supp. 2d 591, 597 (W.D. Tex. 2008); *Arzberger*, 592 F. Supp. 2d at 600. By requiring that anyone charged with an enumerated crime be confined to his home for a period of time and tracked with an electronic ankle monitor to ensure compliance, the curfew and electronic monitoring conditions indisputably restrict a person's right to free movement. *See United States v. Arzberger*, 592 F. Supp. 2d 590, 600 (S.D.N.Y. 2008) (citing *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003)); *United States v. Polouizzi*, 697 F. Supp. 2d 381, 391 (E.D.N.Y. 2010) ("A curfew, by its definition, restricts the ability of the defendant to move about in a public area during substantial periods of time. The condition of a mandatory curfew with an associated electronic monitoring bracelet imposed pursuant to the Adam Walsh Act substantially constrains freedom-of-movement liberty.").

Additionally, "[t]he right to non-excessive bail prior to trial is inextricably intertwined with the presumption of innocence." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 394 (E.D.N.Y. 2010) (citing *Stack v. Boyle,* 342 U.S. 1, 4 (1951) ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.")). Mandating a restrictive curfew and electronic monitoring based solely on the government's accusation that a person has committed a crime clearly violates the well-established presumption of innocence. The existence of the Excessive Bail Clause within the Eighth Amendment is evidence that the accused's right to be free from warranted conditions of pretrial release has been considered a fundamental right since the country's inception. This fundamental liberty interest was grafted into the Bail Reform Act in the parsimony provision of the Act itself. 18 U.S.C. § 3142(c)(1)(B) (a defendant who is to be released is to be "subject to the least restrictive condition, or combination of conditions…").

Before conditions infringing upon these fundamental liberty interests may be imposed, due process must be afforded to the accused.

     b.   <u>The Adam Walsh Act's imposition of mandatory conditions without any adversarial hearing violates due process.</u>

In determining what process is due, a court must carefully balance the competing concerns—the private interest affected by the official action and the government's asserted interest—analyzing "'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *Mathews v. Eldridge*, 524 U.S. at 335).

The Adam Walsh Act Amendments provide insufficient protections for the significant liberty interests at issue. The Act's principal defect is that it creates an *irrebuttable* presumption as to the imposition of certain conditions, including a curfew and electronic monitoring, based solely on the charge brought by the U.S. Attorney's Office. *United States v. Vujnovich*, No. 07-20126-01-CM-DJW, 2008 WL 687203 at *2 (D. Kan. Mar. 11, 2008); *Crowell*, 2006 WL 3541736 at *9. This distinguishes the Adam Walsh Act Amendments from the Bail Reform Act's *rebuttable* presumption of detention pending trial for defendants charged with certain serious felonies, which merely places a burden on the defendant to demonstrate that detention is unnecessary. Far from being mandated, the outcome of a detention hearing is determined by a neutral judicial officer after careful consideration of the delineated statutory factors. *United States v. Salerno*, 481 U.S. 739, 750-52 (1987). The Supreme Court reasoned in *Salerno*:

> Nor is the [Bail Reform] Act by any means a scattershot attempt to incapacitate those who are merely suspected of these serious crimes. The government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough. In a full-blown adversary hearing, the government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any persons.

*Id.* at 750. Fatally absent from the Adam Walsh Amendments are the "numerous procedural safeguards" outlined in *Salerno*, including: (1) the right to a hearing before a judicial officer; (2) where the defendant is represented by counsel; (3) with the right to testify on his or her own behalf, proffer information, and cross-examine witnesses called by the government. *Id.* at 751-52.

Further, as Judge Caproni, Judge Weinstein, and numerous other judges have observed,

> More fundamentally, the Government has failed to show *how* the mandatory curfew and electronic monitoring conditions serve its interests in protecting the public. As Judge Weinstein and other courts have observed, Congress did not offer any evidence or findings of how a curfew and electronic monitoring help protect children from sexual attacks, nor did Congress explain why these conditions must be mandatory (rather than left to the discretion of district courts). *See Polouizzi*, 697 F. Supp. 2d at 392; *see also, e.g., United States v. Gardner*, 523 F. Supp. 2d 1025, 1030 n.2 (N.D. Cal. 2007). The Government has offered no statistical or evidentiary basis for the Court to conclude that these conditions bear any relationship to the interest that they purport to serve."

*United States v. Diaz*, No. 17-CR-227(VEC), 2018 WL 5282882, at *5 (S.D.N.Y. Oct. 24, 2018) (emphasis in original). *See also United States v. Karper*, 847 F. Supp. 2d 350, 361 (N.D.N.Y. 2011) ("When enacting the Adam Walsh Act, Congress did not make any empirical finding that persons charged with the possession of child pornography are more likely to flee or continue to harm children, if released. There was no assessment nor statistical finding of a greater risk of future crimes by these defendants at this initial juncture of a prosecution. Without such a showing, the need for such a burden upon an accused's fundamental rights is unjustified, especially, when someone like Karper presents no risk.").

The Court should join the vast majority of courts to review the Adam Walsh Act Amendments and find that the mandatory imposition of curfew and electronic monitoring conditions "in every case[,] without an opportunity to be heard as to these release conditions and without the benefit of a court's discretion, which is faithfully provided in all other types of federal charges," facially violates the Fifth Amendment. *Karper*, 847 F. Supp. 2d at 356.

> ### ii. The curfew and electronic monitoring conditions required by the Adam Walsh Act violate the Due Process Clause of the Fifth Amendment as applied to Mr. Cruz.

Because Mr. Cruz is charged under 18 U.S.C. § 2251(a), he is subject to the mandatory location monitoring and curfew conditions required by the Adam Walsh Act amendments to the Bail Reform Act. *See* 18 U.S.C. § 3142(c)(1)(B). As the Court knows, Mr. Cruz has no prior criminal history. The government does not allege that he ever engaged in uncharged criminal conduct involving minors before his arrest for the instant offense. He has no diagnosed mental health conditions or history of substance abuse problems. The offenses he stands accused of took place exclusively online and involved victims thousands of miles away. There is no allegation that Mr. Cruz had any in-person contact with any minor or attempted to meet up with any minor in person. He has lived with and cared for his two sons for over a decade, he cares for his mother with dementia, and he maintains full-time employment as a porter and handyman. During the 18 months between the execution of a search warrant at his home in August 2021 and his arrest in April 2023, Mr. Cruz did not attempt to flee the district or engage in any further criminal conduct. And critically, at this juncture, it is clear that he is committed to appearing in court as directed and does not pose any danger to the community.

The government's evidence of Mr. Cruz's guilt is significantly weaker than in the vast majority of cases where defendants face similar charges. *See* 18 U.S.C. § 3142(g)(2). The government believes that Mr. Cruz committed the instant offenses because a phone number associated with him—which is registered to his brother, William, and William told police was *his* number—engaged in the subject communications, the cell phone to which that number pertains was found more than eight months after the subject communications in the apartment he shared with his sons, and Mr. Cruz made statements during two interrogations that the government believes confirms his use of the phone to commit the instant offenses. But in any event, because Mr. Cruz's personal history and characteristics and the exclusively online nature of the offense weigh heavily against imposing a curfew and location monitoring, the weight the Court gives the government's evidence of guilt is not dispositive.

But for the crimes Mr. Cruz is charged with and, as a result, the mandatory application of the Adam Walsh Act conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii) of Section 3142(c)(1)(B), the curfew and electronic monitoring conditions would not be imposed for a defendant with no prior criminal history, no identifiable risk factors, and significant family and community ties because they exceed the "least restrictive conditions" that would "reasonably assure the appearance

6

of the person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(b)(1)(B). Again, it is unclear *how* the mandatory curfew and electronic monitoring conditions serve the government's interest in protecting the public, particularly when the alleged offenses took place exclusively online and could be committed just as easily (if not more easily) from the privacy of one's home. Imposition of these conditions for Mr. Cruz is just as inappropriate here as it was for the defendant in *United States v. Karper*:

> If charged with any other federal crime, for all intents and purposes, Karper would have been an appropriate candidate to be released on his own recognizance or possibly on a rather nominal bond, along with some pretrial conditions of release other than curfew or electronic monitoring. But for the Adam Walsh Act and its irrebuttable presumption as to the imposition of certain conditions such as a curfew and electronic monitoring, Karper would have been allowed to argue and present proof that it would be more fitting for him to be placed on "less restrictive conditions," or, for that matter, for this Court to consider less restrictions as strongly urged by 18 U.S.C. § 3142(c)(1)(B). When enacting the Adam Walsh Act, Congress did not make any empirical finding that persons charged with the possession of child pornography are more likely to flee or continue to harm children, if released. There was no assessment nor statistical finding of a greater risk of future crimes by these defendants at this initial juncture of a prosecution. Without such a showing, the need for such a burden upon an accused's fundamental rights is unjustified, especially, when someone like Karper presents no risk.

847 F. Supp. 2d 350, 361 (N.D.N.Y. 2011).

Thus, in addition to facially violating the Fifth Amendment, the mandatory imposition of a curfew and electronic monitoring exceeds what is required by the Bail Reform Act as applied to Mr. Cruz, in violation of his right to procedural due process.

> **B. The Adam Walsh Act Amendments violate the Excessive Bail Clause of the Eighth Amendment.**
>
>> **i. The Adam Walsh Act Amendments to the Bail Reform Act facially violate the Eighth Amendment because they require mandatory curfew and electronic monitoring in every case, without opportunity for the exercise of judicial discretion.**

The Eighth Amendment to the United States Constitution dictates that "excessive bail not be required." U.S. Const., amend. VIII. The Clause requires bail to be set on an individual basis by the courts and not by Congress: "[T]he fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (monetary bail set uniformly in a multi-defendant case without individualized consideration violated the Excessive Bail Clause); *see also Salerno*, 481 U.S. at 754 ("bail shall not be excessive in those cases where it is proper to grant bail"). The mandatory conditions of release dictated by the Adam Walsh Act Amendments facially violate the Eighth Amendment's Excessive Bail Clause because they impose conditions without regard for the personal characteristics of the person accused.

The Supreme Court has instructed that, when considering a challenge under the Excessive Bail Clause,

> The only substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be "excessive" in light of the perceived evil. Of course, to determine whether the Government's response is excessive, we must compare that response against the interest the Government seeks to protect by means of that response.

*Salerno*, 481 U.S. at 754. Thus, the questions to be weighed by this Court are: (1) what government interest is the Adam Walsh Act meant to address, and (2) is the government's response excessive?

   a.  <u>Congress did not identify any government interest the amendments to the Bail Reform Act were meant to address.</u>

Although Congress offered reasons for enacting other provisions of the Adam Walsh Act, no reasons were offered for the amendments to the Bail Reform Act at issue in this case. The mandatory bail conditions "were added to the bill's language only seven days prior to the bill's final passage. The amendment including the conditions was passed without substantive debate or supporting congressional reports." *United States v. Gardner*, 523 F. Supp. 2d 1025, 1030 n.2 (N.D. Cal. 2007); *see also* Adam Walsh Act, H.R. 4472, Title II § 216. Thus, Congress made no finding identifying its rationale for amending the bail statute. *See id.* Nor does anything in the Congressional record offer a basis for the addition of these mandatory conditions. *See* Children's Safety and Violent Crime Reduction Act of 2006, 152 Cong. Rec. S. 8012-02 (July 20, 2006), 2006 WL 2034118.

The lack of Congressional findings in support of the Amendments is in contrast to the Congressional findings made when the Bail Reform Act of 1984 was enacted. In 1984, Congress specifically identified the perceived problem and explained how the legislation would address its concern. "[It is] the committee's determination that federal bail law must address the alarming problem of crimes committed by persons on release and must give courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." S. Rep., No. 98-225, 98th Cong. 1stn Sess. 26 (1983), reprinted in 1984 U.S. Cong. & Admin. News 3182, 3187-88. The Supreme Court, in *Salerno*, relied on these Congressional findings in concluding that the Bail Reform Act was constitutional. 481 U.S. at 750.

Accordingly, there is no identifiable government interest justifying the Congressional mandate to impose the Adam Walsh Act Amendments' mandatory conditions of release. The absence of an identified government interest renders the restrictions excessive.

   b.  <u>Even if the court were to discern a government interest, the mandatory imposition of restrictive conditions in every case is excessive.</u>

Even if this Court were to conclude that the Adam Walsh Amendments further a valid government interest, the mandatory imposition of the restrictive conditions "on all defendants charged with certain crimes, regardless of the personal characteristics of each defendant and circumstances of the offense, without any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom such conditions are… unnecessary[] to excessive bail in violation of the Eighth

Amendment." *United States v. Crowell*, No. 06-CR-291, 2006 WL 3541736, at *7 (W.D.N.Y. Dec. 7, 2006).

It is unclear how "removing from judicial consideration" the necessity of restrictive conditions like travel restrictions, limits on associations, curfew, and electronic monitoring actually address this concern, *Torres*, 566 F.Supp.2d at 598, especially where, as here, the offense charged involves exclusively online activity. In contrast, in *Salerno*, the Supreme Court identified Congress' legislative goal as ensuring judicial authority to craft conditions that ensure offenders arrested on serious charges who "are more likely to be responsible for dangerous acts in the community after arrest" do not reoffend. 481 U.S. at 750. (citing S.Rep. No. 98-225, at 6-7). The Court concluded that the government's response to this concern was not excessive, in violation of the Eighth Amendment, because the Bail Reform Act provided for a court to balance these competing interests on an individualized basis "after and adversary hearing" involving "numerous procedural safeguards." *Id.* at 755. These procedural safeguards and individualized analysis are absent from the Adam Walsh Amendments.

As Judge Francis observed in *Arzberger*, "[i]f the Excessive Bail Clause has any meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy legitimate governmental purposes and (2) result in deprivation of the defendant's liberty." *United States v. Arzberger,* 592 F.Supp.2d at 605-06 (citing *Stack v. Boyle,* 342 U.S. 1 (1951)). *See also United States v. Polouizzi,* 697 F.Supp.2d at 390 ("Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest[,] ... preventing risk of flight and danger to society or children."); *United States v. Karper*, 847 F. Supp. 2d 350, 363 (N.D.N.Y. 2011) ("[T]he relinquishment of constitutionally protected rights, such as the freedom of movement, on conditions that are more than necessary to satisfy legitimate governmental interests would constitute excessive bail in violation of the Eighth Amendment.").

Because the Adam Walsh Act Amendments require the imposition of mandatory, restrictive conditions of release in every case without regard for the individual circumstances of the accused, the mandatory conditions facially violate the Eighth Amendment's prohibition on excessive bail. *Torres*, 566 F.Supp.2d at 600-02; *Crowell*, 2006 WL 3541736 at *6.

> **ii. The Adam Walsh Act Amendments to the Bail Reform Act violate the Eighth Amendment as applied to Mr. Cruz because the mandatory curfew and electronic monitoring conditions exceed the conditions of release necessary to ensure his future appearance and public safety under the Bail Reform Act.**

As discussed above, based on an individualized assessment of Mr. Cruz, imposition of the mandatory curfew and location monitoring conditions would be excessive. Thus, even if the Court were to determine the Adam Walsh Act Amendments do not facially violate the Eighth Amendment, because conditioning Mr. Cruz's release on these conditions subjects him to excessive bail, they violate the Eighth Amendment's prohibition against excessive bail as applied to Mr. Cruz. *Torres*, 566 F.Supp.2d at 600-02; *Crowell*, 2006 WL 3541736 at *6.

    **b. The Adam Walsh Act Amendments violate the Separation of Powers Doctrine.**

By mandating certain pretrial release conditions, the Adam Walsh Act Amendments also violate the Separation of Powers doctrine. "[W]ithin our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380 (1989). "The doctrine of the separation of powers was adopted [not] to promote efficiency but to preclude the exercise of arbitrary power." *Myers v. United States*, 272 U.S. 52, 85 (1926); *see also The Federalist*, No. 47, at p. 324 (James Madison) ("The accumulation of all powers legislative, executive and judiciary in the same hand, whether of one, a few or many… may justly be pronounced the very definition of tyranny.").

The separation of powers doctrine is violated when Congress "prescribes a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently, including the consideration of relevant evidence." *Crowell*, 2006 WL 3521736 at *11 (citing *United States v. Klein*, 80 U.S. 128, 146-47 (1871)). Thus, as the *Crowell* court held:

> [B]y enacting the Adam Walsh Amendments, Congress has unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions. In doing so, Congress has commandeered the court into acting as its agent for purposes of imposing the targeted release conditions. Since the Constitution was adopted, the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power. As such, the Adam Walsh Amendments unmistakedly encroach upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework.

*Crowell*, 2006 WL 3521736 at *11 (citations and internal parenthetical omitted) (footnotes omitted).

The judiciary is ultimately charged with the "fixing of bail," *i.e.*, determining whether or not an accused shall be released pending trial and under what conditions. The Eighth Amendment to the Constitution requires that the judiciary oversee the imposition of bail on an individualized basis. *Stack*, 342 U.S. at 4. The Adam Walsh Act Amendments to the Bail Reform Act therefore usurp a quintessential judicial function by mandating the imposition of certain conditions, in violation of the Constitution.

## III.    Conclusion

For the foregoing reasons, the Court should find the Adam Walsh Act Amendments violate the Fifth and Eighth Amendments to the U.S. Constitution, both facially and as applied to Mr. Cruz, as well as the separation of powers doctrine. And consequently, the Court should strike the curfew and electronic monitoring conditions previously imposed as conditions of Mr. Cruz's release.

Thank you for your consideration.

Respectfully Submitted,

_____/s_____

Nora K. Hirozawa
Counsel to Mr. Ricaurte Cruz
Federal Defenders of New York, Inc.

cc:    AUSA Matthew Skurnik
       AUSA Joshua Dugan
       PTSO Valeria Lopez