

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JRS:JBD                         *271 Cadman Plaza East*
F. #2023R00189                  *Brooklyn, New York 11201*

July 22, 2026

By ECF

The Honorable Nina R. Morrison
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>          Re:      United States v. Alex Ricaurte Cruz
>                   Criminal Docket No. 23-159 (NRM)

Dear Judge Morrison:

The government respectfully writes in opposition to the letter submitted by the defendant on June 28, 2026, seeking to remove two conditions of his pre-trial release—electronic monitoring and a curfew—on the grounds that the statute requiring imposition of those conditions, the Adam Walsh Child Protection Act, is unconstitutional. ECF Doc. No. 59 ("Def. Ltr."). As an initial matter, the Court should deny the defendant's request because, notwithstanding any constitutional challenges, the curfew and electronic-monitoring conditions are reasonably necessary in this case under the Bail Reform Act to ensure the defendant's appearance at trial and ensure the safety of the community. Further, even should the Court reach the constitutional question raised by the defendant, the Court should follow the reasoning of the two Circuit Courts to decide the question and find that the Adam Walsh Child Protection Act's conditions are constitutional. Accordingly, the defendant's motion should be denied.

I.       The Statutory Scheme

Under the Bail Reform Act of 1984, determinations as to release or detention pending trial are governed by 18 U.S.C. § 3142. Pursuant to Section 3142(a)(2), a defendant can be released under conditions set forth in Section 3142(c), which section, in general, requires the court to impose the "least restrictive" set of conditions that will "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(2)(B). Among the conditions that can be imposed under Section 3124(c)(2)(B) are fourteen enumerated conditions listed in Section 3142(c)(2)(B)(i) through (xiv).

On July 27, 2006, the President signed the Adam Walsh Child Protection and Safety Act (the "Act"), amending the Bail Reform Act and mandating certain minimum release conditions in every case involving a defendant charged with certain offenses related to sexual exploitation of children, including 18 U.S.C. § 2252(a)(2), sexual exploitation of a child, the offense here at issue. See Pub. Law No. 109-248, § 216, 120 Stat. 587, 617 (2006), codified at 18 U.S.C. § 3142(c)(1)(B). The Act requires that, with respect to these cases, "any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (vii)," which are, respectively, that the defendant "abide by specified restrictions on personal associations, place of abode, or travel," "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense," "report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency," "comply with a specified curfew," and "refrain from possessing a firearm . . . ." 18 U.S.C. § 3142(c)(1)(B)(iv)-(viii) (the "Adam Walsh Conditions").

II.     The Defendant's Curfew & Electronic-Monitoring Conditions Are Proper Under the Bail Reform Act

The Court need not address the constitutionality of the Adam Walsh Conditions because, even without consideration of the Act, the curfew and electronic monitoring conditions are part of the least-restrictive conditions necessary to ensure this particular defendant's appearance and the safety of the community under the Bail Reform Act. See 18 U.S.C. § 3142(c)(B).

As the Court is aware, the defendant is charged with incredibly serious and dangerous conduct. Indeed, based on the defendant's conduct, there is a presumption that there is no condition or combination of conditions that would reasonably protect the community or assure his appearance at trial. 18 U.S.C. § 3142(e)(3)(E). To the extent the defendant has presented evidence to overcome the presumption that he should be detained, he certainly has not presented evidence that would show why he should not be subject to any of his release conditions.

The defendant repeatedly contacted numerous prepubescent children and demanded that they create and send to him child-sex-abuse material. His conduct involved using his cellphone, typically at night, to target his victims. As a condition of his release, the defendant may not use a computer or access the internet, except for work purposes, may only have one internet-capable device, and must submit that device to monitoring by Pretrial Services. The defendant does not challenge any of these conditions, nor would he have any basis for doing so. Were the defendant allowed to move freely about the community without any monitoring or restrictions, he would undoubtedly be able to access devices that he could use to target additional victims. The restrictions on his use of devices—which, again, he does not challenge here— would be a nullity. What is more, the curfew requirement, flexible as it is, is tailored to the defendant's criminal activities here because it limits his ability to leave his house and be in locations with other electronic devices during the evening times when he would target his victims. The curfew and electronic-monitoring conditions are therefore part of the combination of conditions necessary to ensure the defendant does not re-offend while on pretrial release.

By the same token, these conditions are necessary to ensure the defendant's appearance at trial. The defendant is facing a 15-year-mandatory-minimum sentence if he is convicted. Courts have found that defendants facing materially shorter prison terms pose significant flight risks. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that Scali's Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Williams, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020) (Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee"). Moreover, the evidence of the defendant's guilt—including the fact that evidence of the crimes was found on a phone that he acknowledged was his and to which he knew the password; the fact that he admitted to being the user of the Snapchat account used to contact multiple victims; and that child-sex-abuse material was found on his phone—provides even greater incentive for the defendant to flee here. United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022); United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee."). Given that strong incentive to flee, the curfew and electronic-monitoring conditions are also necessary to ensure his appearance.

In United States v. Kim, 16-MJ-280 (VVP) (E.D.N.Y. 2016), Magistrate Judge Pohorelsky found that the Adam Walsh Conditions were unconstitutional as applied to the defendant, who was charged with receiving child-sex-abuse material. ECF Doc. No. 10. The government appealed that order to Judge LaShann DeArcy Hall. Judge DeArcy Hall declined to reach the constitutional issue and instead overturned Judge Pohorelsky's order on the ground that electronic monitoring and home confinement were necessary based on an individualized determination that the defendant posed a flight risk and danger to the community. See id., April 13, 2016 Minute Entry & Order. Like Judge DeArcy Hall, the Court can and should find that the individualized determination under the Bail Reform Act provides an independent basis for denying the defendant's motion here.

III.     The Adam Walsh Conditions Are Constitutional

Although the Court need not address the constitutionality of the Adam Walsh Conditions to deny the motion, if the Court reaches that issue, it should find the conditions constitutional. The defendant challenges the Act's mandatory curfews and electronic-monitoring

requirements on Due Process, Excessive Bail, and Separation-of-Powers grounds. Each of these challenges misapplies the relevant constitutional standards and should be rejected.

### A.  The Defendant's Facial Challenge Should be Rejected

As a threshold matter, the defendant's facial challenge to the constitutionality of the Act should be rejected because he does not attempt to address why the Act could not be constitutionally applied to offenders situated differently from him. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745-46 (1987). While the defendant's challenge to the Act's application to what he characterizes as "exclusively online" activity "involve[ing] victims thousands of miles away," Def. Ltr. at 6, should be rejected for the reasons described below, he never argues why the Act could not be applied to offenders whose conduct involved physically abusing their victims. Nor does he argue, for example, why mandatory electronic monitoring and curfew restrictions could not be constitutionally applied to offenders who violated the terms of their pretrial supervision by abusing children. This omission is fatal to the defendant's claim that the Act is unconstitutional on its face. See Salerno, 481 U.S. at 751 (rejecting facial challenge to Bail Reform Act where procedures were "adequate to authorize the pretrial detention of at least some persons charged with crimes" (internal quotations and alterations omitted); United States v. Polouizzi, 697 F. Supp. 2d 381, 387 (E.D.N.Y. 2010) (declining to consider facial challenge to the Act after noting such a challenge would be unsuccessful if the Act could be applied constitutionally to any category of offenders).

### B.  The Adam Walsh Conditions do not Violate the Due Process Clause

Contrary to the defendant's claim, the Due Process Clause does not entitle the defendant to any additional process beyond that afforded by the Act—indictment on the specified charges by a grand jury and an appearance in front of a judge—before the Adam Walsh Conditions are imposed. The defendant begins by applying the wrong due process test to this claim. The Adam Walsh Conditions implicate the substantive due process test, not a procedural due process claim. Under that test, the Act is clearly constitutional.

The Supreme Court has made clear that challenges like the defendant's challenge to the Adam Walsh Conditions should be analyzed under substantive due process principles and, that under these principles, the requirements must be viewed as valid. The Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend V. This constitutional provision protects against two types of governmental action: First, "[s]o called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience'. . . or interferes with rights 'implicit in the concept of ordered liberty.'" Salerno, 481 U.S. at 746 (internal quotations omitted). Second, if the governmental action survives substantive due process scrutiny, its implementation must be done in a fair manner to satisfy procedural due process. Id.

The substantive due process analysis first asks whether government action infringes on any fundamental liberty interest and, if so, whether the infringement is narrowly

tailored to serve a compelling state interest. <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720-21 (1997). As to the liberty interest, the "Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" <u>Id.</u> (citations omitted). The Supreme Court has "required in substantive due process cases a 'careful description' of the asserted fundamental liberty interest." <u>Id.</u> at 721. Where, as here, there is no fundamental liberty interest infringed by the statute, all that need be shown is that "there is a reasonable fit between the governmental purpose . . . and the means chosen to advance that purpose." <u>Reno v. Flores</u>, 507 U.S. 292, 305 (1993).

Substantive due process principles, not procedural due process ones, apply to challenges to legislation that impose categorical requirements, like the ones challenged by the defendant here. In <u>Connecticut Dept. of Public Safety v. Doe</u>, 538 U.S. 1 (2003), for example, Connecticut enacted a "Megan's Law" provision requiring all persons convicted of criminal offenses against a minor, sexual offenses, or felonies committed for a sexual purpose to register with the Connecticut Department of Public Safety upon their release into the community. <u>Id.</u> at 4. The law further required that state agencies post the registry on an internet website and make it available in state offices. <u>Id.</u> at 5. A released offender challenged the registration requirement on the ground that it deprived him of a liberty interest—his reputation and the alteration of his status—without notice or a meaningful opportunity to be heard. <u>Id.</u> at 6.

The Supreme Court rejected the offender's challenge. In doing so, it assumed that the offender had a valid liberty interest. It held, however, that "due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." <u>Id.</u> at 7. The Court distinguished cases in which it had held that due process principles required a hearing, noting that those cases involved facts to be determined that were "concededly relevant to the inquiry at hand," whereas "the fact that [Doe] seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law" because Connecticut had categorically decided that "all sex offenders—currently dangerous or not—must be publicly disclosed." <u>Id.</u> at 7-8.

The same is true here with respect to the Adam Walsh Conditions. Congress has determined that all individuals for whom there is probable cause to be charged with certain child sex crimes should be subject to electronic monitoring and should have some form of curfew restrictions. Given the law's categorical application, no right to a hearing is required. <u>See</u> <u>United States v. Gardner</u>, 523 F. Supp. 2d 1025, 1033 (N.D. Cal. 2007) (upholding Act's electronic monitoring condition; "[a]lthough the Bail Reform Act prior to the Adam Walsh Act restricted the government's ability to impose the condition of electronic monitoring, procedural due process does not prevent Congress from taking away what it previously conferred").

Under the applicable substantive due process analysis, the defendant's challenge must fail because he has not identified a fundamental liberty interest infringed by the Adam

Walsh Conditions.  And even if he had, those conditions would be justified by a compelling state interest.

Contrary to the defendant's claims, the Adam Walsh Conditions infringe on neither the presumption of innocence nor the right to travel.  For one thing, the Supreme Court has made clear that the presumption of innocence has "no application" to the rights of a pretrial defendant "before his trial has even begun."  Bell v. Wolfish, 441 U.S. 520, 532-33 (1979).  Regarding the right to travel, the defendant does not explain how the Adam Walsh Conditions meaningfully interfere with that right.  Indeed, he notes that every request he has made to extend his curfew has been granted.  Def. Ltr. at 2.  The closest the defendant comes to suggesting that his right to travel is being infringed upon is the conclusory assertion that "on some occasions [he] has decided not to attend events with his family and friends due to his curfew."  Id. 2.  But the defendant's own decision to refrain from conduct that he acknowledges the government would likely permit is not an allegation of the government's unconstitutional conduct.

The very flexibility cited by the defendant in the application of the Adam Walsh Conditions highlights why they do not unconstitutionally burden a constitutionally protected liberty interest—as the two Circuit Courts to consider the Act's constitutionality have found.  United States v. Stephens, 594 F.3d 1033 (8th Cir. 2010);  United States v. Kennedy, 327 F. App'x 706 (9th Cir. 2009).  In both cases, the courts emphasized that district courts retained significant discretion to tailor the curfew and electronic monitoring requirements to individual defendants.  Stephens, 594 F.3d at 1039; Kennedy, 327 F. App'x at 707.  That same logic is certainly true here, where the defendant has effectively conceded that the Act's requirements have been individually tailored in such a way to allow him to travel every time he has asked to do so.

Even if the defendant were able to claim a fundamental right was infringed, the government's compelling interests in protecting children from sexual abuse and ensuring his appearance at trial justify the Adam Walsh Conditions.  "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."  New York v. Ferber, 458 U.S. 747,757 (1982).  "We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."  Salerno, 481 U.S. at 748.  Here, the defendant repeatedly and methodically targeted children over the internet asking them to produce child-sex-abuse material for him.[1]  Most of his conduct occurred at night, typically after 9:00 p.m.  Particularly given the ubiquity of electronic devices, a flexible curfew and monitoring of the defendant's whereabouts during times that he

---

[1] The defendant's conduct and resulting charge materially distinguishes his case from the magistrate and district court cases cited by the defendant in this brief.  Each of the cases cited by the defendant involve charges for possessing or receiving child-sex-abuse material.  Here, by contrast, the defendant is charged with sexually exploiting multiple children.  The corresponding need to protect children in the community is therefore significantly higher with respect to this defendant than the defendants in the cases cited in the defendant's brief.

6

has previously offended is narrowly tailored to the government's interest in ensuring the defendant does not harm other children.[2]

### C.  The Adam Walsh Conditions do not Violate the Excessive Bail Clause

Contrary to the defendant's contention, the Adam Walsh Conditions do not implicate, let alone violate, the Eighth Amendment.  On the most basic level, the Adam Walsh Conditions are not "bail."  Bail, as the Supreme Court has explained, is "a bail bond or the deposit of a sum of money."  Stack v. Boyle, 342 U.S. 1, 5 (1951).  The Adam Walsh Conditions are neither, and the Court should reject the defendant's attempt to shoehorn them into a facially inapplicable constitutional provision.

Moreover, "when Congress has mandated detention on the basis of a compelling interest other than the prevention of flight, as it has here, the Eighth Amendment does not require release on bail."  Salerno, 481 U.S. at 754.  If Congress's compelling interest in protecting children from sexual predators means that Congress could, consistent with the Eighth Amendment, deny bail entirely to all of those offenders, then Congress can certainly mandate restrictions far less onerous than detention on those offenders, as it did here.

The defendant tries to avoid this conclusion by claiming that Congress did not actually have any purpose in passing the Act, let alone the compelling interest in protecting children from sexual abuse.  Def. Ltr. at 8.  In making this argument, the defendant looks to the Act's legislative history—a currently disfavored method of statutory interpretation—and concludes that the absence of history is evidence that Congress acted with no purpose.  This logic is not only flawed, it ignores the clear evidence of Congress's purpose in the text itself.

The Act contains a series of provisions that collectively reflect a clear intent to protect children from offenders before, during, and after conviction.  In addition to the pretrial conditions here, the Act, among other things, (1) provides for the civil commitment of sexually dangerous offenders after they have served their criminal sentences, 18 U.S.C. § 4248; (2) creates a sex-offender registry, 34 U.S.C. § 20901 et seq.; and (3) increases the penalties for sexual offenses against children, e.g., 18 U.S.C. § 2241(c) (increasing mandatory-minimum

---

[2] Rather that engage in the substantive due process analysis required by the Supreme Court in Connecticut Dept. of Public Safety, the defendant argues that the Court should engage in the procedural due process test used by the Court in Matthews v. Eldridge, 424 U.S. 319 (1976).  Under that test, the court considers, first, the private interest that will be affected by the official action, second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and third, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  Id. at 335.  Even under that test, the Adam Walsh Conditions would be constitutional given (1) the relatively small impact on the defendant's freedom of movement, (2) the statute's built-in flexibility designed to further limit any risk of erroneous deprivation; and (3) the government's significant interest in protecting the community against child-sex crimes.

penalty to 30 years for aggravated child sexual abuse).  The title of the Act is literally, "the Adam Walsh Child Protection and Safety Act."  Both the plain text of the Act and its title make unambiguously clear that Congress's goal in enacting the Act, including the challenged conditions, was to protect children.  Under <u>Salerno</u>, no additional inquiry is appropriate.  481 U.S. at 754.[3]

D.  <u>The Adam Walsh Conditions do not Violate the Separation of Powers</u>

Finally, the defendant argues that the curfew and electronic-monitoring requirements violate the separation of powers doctrine.  That argument is also without merit.  First, it entirely ignores the judicial discretion crafted into the statute—and exercised here—in setting the particular release parameters.  As discussed above, the court must undertake an individualized detention hearing and consider the appropriate curfew, among other conditions, to impose on a given defendant.  The Act therefore does not interfere with the court's ability to individually evaluate the particular circumstances of each defendant on an individualized basis.

Moreover, it is simply untrue to suggest that legislative limits on judicial discretion violate the separation of powers.  <u>See, e.g.</u>, <u>Chapman v. United States</u>, 500 U.S. 453, 467 (1991) (rejecting separation of powers challenge to mandatory minimum sentences); <u>United States v. Gagliardi</u>, 506 F.3d 140, 148 (2d Cir. 2007) (same).  Indeed, within the specific context of bail determinations, the Supreme Court has held that Congress may pass laws circumscribing the judicial role in setting bail.  <u>See Salerno</u>, 481 U.S. at 755 (upholding Bail Reform Act, and Congressional prerogative to pass laws concerning imposition or bail).

---

[3] Even if the Court were to go beyond <u>Salerno</u> and consider whether the Adam Walsh Conditions are "excessive," it should conclude that they are not for substantially the same reasons described above in the due process analysis—<u>i.e.</u>, the Adam Walsh Conditions, particularly in the flexible way they are applied here, are narrowly tailored towards ensuring that the defendant does not reoffend by, among other things, accessing impermissible electronic devices during the times he used them to target children in this case.  This is particularly true where, as here, there is a statutory presumption that no condition or combination of conditions will protect the community and ensure the defendant's appearance.

IV.     Conclusion

For the reasons stated above, the government respectfully requests that the Court deny the defendant's motion and refuse to modify his current conditions of release.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     ___/s/_____
Joshua B. Dugan
Assistant U.S. Attorney
(718) 254-7000

cc:     Nora Hirozawa, Esq. (By ECF and E-mail)
Clerk of Court (NRM) (By ECF)