# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and*
*Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

July 31, 2026

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:     *United States v. Alex Ricaurte Cruz*, 23-CR-159 (NRM)

Dear Judge Morrison:

Defense counsel writes in response to the government July 22, 2026 response in opposition to Mr. Cruz's motion to modify the conditions of his pretrial release to remove the curfew and electronic monitoring conditions.

To clarify, Mr. Cruz raises both facial and as-applied procedural due process challenges to the Adam Walsh Act Amendments to the Bail Reform Act and, separately, a substantive due process challenge to the Amendments. Additionally, an individualized assessment under the Bail Reform Act makes clear that the curfew and electronic monitoring conditions imposed at the outset of Mr. Cruz's case exceed the "least restrictive conditions" necessary to reasonably assure his future appearance and community safety. Defense counsel submits on Mr. Cruz's initial motion with regard to the Excessive Bail Clause and separation of powers arguments.

For the reasons detailed below, the Court should join the many courts, both within the Second Circuit and beyond, who have found that the Adam Walsh Act Amendments' mandatory restriction of fundamental liberty interests violates due process. And the Court should, accordingly, modify Mr. Cruz's pretrial release conditions to remove the curfew and electronic monitoring.

## I.     The Adam Walsh Act Amendments to the Bail Reform Act violate procedural due process.

Contrary to the government's claim that "challenges like the defendant's challenge to the Adam Walsh Conditions" should be analyzed under substantive due process principles, the vast majority of courts to address the Adam Walsh Act Amendments to the Bail Reform Act have applied a procedural due process framework. *See, e.g.*, *United States v. Diaz*, No. 17-CR-227(VEC), 2018 WL 5282882, at *2 (S.D.N.Y. Oct. 24, 2018); *United States v. Karper*, 847 F. Supp. 2d 350, 361 (N.D.N.Y.

2011); *United States v. Polouizzi*, 697 F. Supp. 2d 381, 386–87 (E.D.N.Y. 2010) (collecting cases); *United States v. Torres*, 566 F. Supp. 2d 591, 596 (W.D. Tex. 2008).

### a. The Adam Walsh Act Amendments facially violate procedural due process.

The Adam Walsh Act Amendments to the Bail Reform Act, codified at 18 U.S.C. § 3142(c)(1)(B), are unconstitutional on their face because the absence of procedural protections is universal: no defendant is afforded the opportunity to present particularized evidence to rebut the presumed need to restrict his freedom of movement.

Procedural due process instructs that, regardless of the interest involved, "the fundamental requisite of due process of law is the opportunity to be heard." *See Goldberg v. Kelly*, 254 U.S. 254, 263 (1970). The process due in a given situation is determined by weighing "the private interest that will be affected by the official action" against the "government's asserted interest, 'including the function involved' and the burdens the government would face in providing greater process." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

The inquiry involves a two-step analysis. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). First, the court determines whether a protected liberty or property interest was deprived. *See id.* The court must then determine whether the procedures attendant to the deprivation of that interest are constitutionally sufficient. *Id. See also Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 313 (E.D.N.Y. 2025). In so doing,

> [a] court must carefully balance these competing concerns, analyzing "'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.'"

*United States v. Abuhamra*, 389 F.3d 309, 318 (2d Cir. 2004) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *Mathews*, 424 U.S. at 335).

### i. The Adam Walsh Act Amendments infringe upon a protected liberty interest.

It is clear that a protected liberty interest exists. The right to freedom of movement—including outside of one's home, at any hour of the day or night—is a well-recognized liberty interest. *See Polouizzi*, 697 F. Supp. 2d at 391 ("A curfew, by its definition, restricts the ability of the defendant to move about in a public area during substantial periods of time. The condition of a mandatory curfew with an associated electronic monitoring bracelet imposed pursuant to the Adam Walsh Act substantially constrains freedom-of-movement liberty."); *United States v. Arzberger*, 592 F. Supp. 2d 590, 600 (S.D.N.Y. 2008) (noting that "the Second Circuit recognizes "[t]he right to intrastate travel," also called "the right to free movement" and holding "the curfew and attendant electronic monitoring here would impinge on a constitutionally-protected liberty interest"); *Torres*, 566 F. Supp. 2d at 597 ("[A]n individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution."); *Karper*, 847 F. Supp. 2d at 363 (recognizing "freedom of movement" as a "constitutionally protected right").

The government cites no precedent to the contrary. Although the Eighth Circuit rejected a facial challenge to § 216 of the Adam Walsh Act Amendments, codified at § 3142(c)(1)(B), the Court

did not question the fundamental liberty interest in freedom of movement.[1] *United States v. Stephens*, 594 F.3d 1033, 1038 (8th Cir. 2010). The Eighth Circuit in *Stephens* and the Ninth Circuit in *United States v. Kennedy* observed that the Adam Walsh Act only requires a curfew and "*some* electronic monitoring," but leaves the particulars of those conditions undefined. The *Stephens* and *Kennedy* courts interpret this as leaving sufficient discretion to tailor conditions that do not infringe upon defendants' liberty interests.

But the government, and the two appellate courts it cites to, fundamentally misapprehend how location monitoring works. An individual subject to the Adam Walsh Act conditions is required to wear an electronic monitoring device on an ankle bracelet 24 hours of every day. The Ninth Circuit claims "the statute does not require or define [the electronic monitoring] condition to be continuous or limited to a particular locality." But the bracelet cannot be removed. If it is removed, that may result in a violation of the individual's pretrial release conditions and revocation of the bond. The location monitoring *is* continuous. Similarly, the existence of a curfew—any curfew—necessarily restricts the hours the individual can leave their home, for any purpose. There is no statutory exception for emergencies, traffic delays, or scheduling issues that might arise. Every time an individual subject to the Adam Walsh Act conditions needs to attend an event outside those curfew hours, he must submit a formal written request to the Court.

No one who has ever had to wear an electronic monitor on an ankle bracelet, with the government capable of tracking their location 24 hours a day, and arrange their work and personal schedule in accordance with a daily curfew subject only to exceptions granted via formal motion to a judge would consider these conditions "flexible." As the vast majority of courts to address the Adam Walsh Act conditions have held, they quite obviously infringe upon a protected liberty interest. *See, e.g.*, *Polouizzi*, 697 F. Supp. 2d at 389 ("Required wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans.").

### ii. The mandatory imposition of the Adam Walsh Act conditions, without any individualized judicial review, fails to satisfy procedural due process.

The second question is whether the mandatory imposition of curfew and electronic monitoring conditions pursuant to Section 3142(c)(1)(B), with no individualized consideration, satisfies procedural due process as required by the Fifth Amendment. It does not. Requiring the imposition of these conditions based solely on the crimes charged creates an irrebuttable presumption and eliminates any opportunity for individualized evaluation of the need for the Adam Walsh Act conditions.

The government cites *Connecticut Department of Public Safety* in support of their argument that individuals charged with child pornography offenses are not entitled to any hearing before the Adam Walsh conditions may be imposed. *See* Dkt. No. 62 at 5. But the statute at issue in *Connecticut Dep't of Public Safety* involved registration requirements for people who had *already been convicted of* sex offenses. This distinction is critical for two reasons. First, as the Supreme Court emphasized, "a *convicted* offender

---

[1] Additionally, the Circuit did not consider any substantive due process challenge.

has already had a procedurally safeguarded opportunity to contest" the fact of his or her conviction. *Connecticut Dep't of Public Safety*, 538 U.S. at 7. In contrast, as discussed in Mr. Cruz's initial motion, the Adam Walsh Act Amendments impose mandatory restrictions on liberty *without* any opportunity for a judge to evaluate the individualized conditions in a particular case or for a defendant to contest the mere charges filed against him. This fails the Fifth Amendment's guarantee of procedural due process.

Second, as discussed in Mr. Cruz's initial motion, the mandatory imposition of conditions that infringe fundamental liberty interests for *every* defendant who has not yet been convicted of any crime undermines the presumption of innocence. The government cites *Bell v. Wolfish* for the proposition that the presumption of innocence has "no application" to the rights of a pretrial defendant "before his trial has even begun." But that was in the context of the conditions of confinement of a pretrial detainee that all parties agreed could be incarcerated pretrial "to ensure his presence at trial." The Court focused primarily on the "compelling necessities of jail administration"—a completely distinct government interest from the interest the government cites here. In contrast, the presumption of innocence is implicit in both the Eighth Amendment to the Constitution's prohibition on excessive bail and the Bail Reform Act's requirement that conditions of pretrial release be individualized and the "least restrictive" necessary.

But perhaps more glaring is how untethered the mandatory Adam Walsh Act conditions are from the purported government interests advanced by the government. Mr. Cruz does not dispute that the government has an interest in protecting children from sexual abuse. But, as Judge Caproni concluded in *Diaz,* the government has once again "offered no statistical or evidentiary basis for the Court to conclude that these conditions bear any relationship to the interest that they purport to serve." *Diaz,* 2018 WL 5282882, at *5. And holding an adversarial hearing on the appropriateness of a curfew and electronic monitoring would "pose little to no incremental burden compared with making those conditions mandatory." *Id.* at 6. Thus, under the *Mathews* balancing test, it is clear that the Adam Walsh Act conditions violate procedural due process.

### b. The Adam Walsh Act Amendments violate procedural due process as applied to Mr. Cruz.

As discussed in his initial motion, there is nothing in Mr. Cruz's personal history and characteristics to support the imposition of a curfew and electronic monitoring under the Bail Reform Act. The government cites no prior criminal history, history of illicit uncharged activity, failure to appear in court, or risk of flight. Further, there is no indication that any of the offense conduct involved attempting to meet up with minors in person or engage in any sort of criminal activity outside the confines of his home.

The fact that the Court has approved modifications to alter the hours of Mr. Cruz's curfew on various occasions does not alter the fact that the conditions infringe upon his right to freedom of movement. The Court rejected a nearly identical claim by the government that this "flexibility" highlights why the conditions do not unconstitutionally burden his right to travel in *Diaz.* 2018 WL 5282882, at *5 ("But the Government's argument misses the point: Diaz has *never* had a hearing at which the Court considered whether a curfew and electronic monitoring were appropriate conditions in his case. When the risk of an erroneous deprivation of liberty is as high as it is here, procedural due

process is not satisfied by giving the defendant a hearing at which the critical issue (here, curfew and electronic monitoring) cannot be considered.").

Considering the totality of the factors enumerated in the Bail Reform Act, it is clear that the curfew and electronic monitoring conditions would not have been imposed but for their mandatory requirement under the Adam Walsh Act. The absence of any adversarial hearing in which Mr. Cruz could challenge these conditions on an individualized basis violates procedural due process as applied to him.

## II.      The Adam Walsh Act Amendments violate substantive due process.

Even if the Court were to undertake the substantive due process analysis advanced by the government, Mr. Cruz prevails. A government action violates substantive due process when it interferes with rights "implicit in the concept of ordered liberty." *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937).

The first inquiry is whether a government action infringes upon a fundamental liberty interest. If so, the court must determine whether the infringement is narrowly tailored to serve a compelling state interest. As discussed above, Mr. Cruz's right to travel is a well-recognized liberty interest. Thus, the government must show that the infringement is narrowly tailored to serve a compelling state interest. Again, as discussed above, it is unclear how a curfew temporally restricting a person's physical movement and an electronic device that allows the government to track a person's movements 24/7 are narrowly tailored to the government's purported interest in protecting children from sexual abuse. When applied to Mr. Cruz, the connection between the mandatory Adam Walsh Act conditions and online-only offenses is even more attenuated, and certainly not narrowly tailored to the government's purported interest.

Finally, even if the Court were to reject the nearly unanimous judicial findings that the Adam Walsh Act Amendments implicate a fundamental liberty interest, even "when a government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner," consistent with the Fifth Amendment's guarantee of "procedural due process." *Salerno*, 481 U.S. at 746 (citing *Mathews*, 424 U.S. at 335. In *Salerno*, the Supreme Court only upheld the Bail Reform Act's presumption of detention under § 3142(e) because it was rebuttable and the appellants' substantive due process rights were safeguarded by a "full-blown adversary hearing" at which the defendant may testify and cross-examine witnesses, the government's burden of proof by clear and convincing evidence, and the discretion afforded to a neutral magistrate evaluating the statutorily enumerated factors, including the history and characteristics of the defendant and the danger to the community. *Id.* at 751–52. None of those safeguards exist here. Because there is no right to rebut or otherwise challenge the mandatory imposition of the Adam Walsh Act conditions, they violate due process even under this more favorable standard.

## III.      An individualized analysis confirms that electronic monitoring and a curfew are not necessary under the Bail Reform Act in Mr. Cruz's case.

### a. Mr. Cruz poses no risk of flight.

The government suggests that the 15-year mandatory minimum sentence Mr. Cruz faces creates a risk of flight because courts have found that defendants facing materially shorter prison terms pose significant flight risks. But the cases the government cites are inapposite.

In *United States v. Scali*, the defendant had already been convicted at trial of multiple felonies and bore the burden of proving by clear and convincing evidence that he was not a flight risk. *Scali*, 738 F. App'x 32, 33 (2d Cir. 2018). Here, the presumption of detention under Section 3142(e)(3)(E) places only "a limited burden of production—not a burden of persuasion" on Mr. Cruz to "com[e] forward with evidence that he does not pose a danger to the community or a risk of flight." *Khusanov*, 731 F. App'x at 21. Additionally, Scali had been convicted of perjury, which the court found made it "difficult to trust his promise that he will not flee." *Scali*, 738 F. App'x at 33. Khusanov was not a U.S. citizen, was involved in a "domestic terrorist support network," and faced a potential sentence of 30 years for material support to ISIS. *Khusanov*, 731 F. App'x at 22-23. Williams was charged with firing a gun at a rival gang member at close range, was an active member of the Folk Nation Gangster Disciples, had extensive prior criminal history, and was on parole when he was arrested for the instant offense. Zhang was charged with murder-for-hire and conspiracy to commit murder-for-hire, a death-eligible offense. He also had extensive ties to China, previously used encrypted messaging applications and burner cell phones, and the government expressed concerns about a disclosed cooperating witness.

But these limited examples offer little statistical insight into whether the risk of a high sentence actually impacts a defendant's likelihood of appearing in court. Indeed, there are plenty of examples of defendants facing the same or similar charges to Mr. Cruz who were released on bond and have readily appeared for every court appearance, notwithstanding the risk of lengthy incarceration.

In contrast to the cases cited by the government, Mr. Cruz has no history of non-appearance or flight. He is the sole caretaker of his two sons, who are now adults but continue to live with him and depend on him financially. He has lived in Queens, New York for the past 20 years, including for over 18 months before his arrest, after agents executed a search warrant at his home and conducted an interrogation that made clear he was the target of their investigation.

### b. Mr. Cruz poses no danger to community safety or to any individual.

The government has not identified any specific individual Mr. Cruz poses a danger to, and their community safety concerns are vague at best. The government's primary evidence against Mr. Cruz consists of records documenting online communications between minors and the user of the -1304 cell phone, seized from Mr. Cruz's basement apartment.[2] The government has never alleged that Mr. Cruz engaged in any hands-on contact with minors or that he attempted to. There is no evidence that he used electronic devices beyond the -1304 cell phone. Nor is there any evidence that he engaged in communications while outside the physical confines of his home.

---

[2] The government notes that evidence of the crimes was found on a phone Mr. Cruz acknowledged was his. Notably, Mr. Cruz's brother also told law enforcement the phone was "his." *See* Dkt. No. 63, DX B, FBI ROI dated August 24, 2021.

The concerns the government has about Mr. Cruz's alleged online communications with minors are more appropriately addressed through monitoring of his electronic devices—a separate condition that Mr. Cruz has not moved to modify at this time. It is unclear how restricting Mr. Cruz's physical movement to certain times of day or permitting the government to track his physical location 24/7 could possibly be considered the least restrictive conditions necessary to ensure community safety.

**IV.     Conclusion**

For the reasons detailed above and in Mr. Cruz's initial motion to modify the conditions of his pretrial release, he respectfully requests that the Court grant his request for modification and hold that the Adam Walsh Act Amendments violate both procedural and substantive due process. In addition, the Court should find the Adam Walsh Act Amendments violate the Eighth Amendment's prohibition of excessive bail and the separation of powers doctrine.

Respectfully Submitted,

/s

Nora K. Hirozawa
Counsel to Mr. Ricaurte Cruz
Federal Defenders of New York, Inc.

cc:      AUSA Matthew Skurnik
AUSA Joshua Dugan
PTSO Valeria Lopez