UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

ALEX RICAURTE CRUZ,

Defendant.

23-CR-159 (NRM)

**MEMORANDUM & ORDER**

**NINA R. MORRISON**, United States District Judge:

Defendant Alex Ricaurte Cruz ("Cruz") moved to suppress (1) the contents of electronic devices seized and searched pursuant to an August 23, 2021 warrant; (2) statements he made during an interrogation at his home on August 24, 2021; (3) statements he made during an interrogation at the FBI's New York office on April 13, 2023; and (4) the fruits a search of his cell phone conducted with his purported consent on April 13, 2023. The Court has considered the parties' briefs, the testimony and exhibits presented at an evidentiary hearing held on April 30, 2026, and the parties' oral arguments before the Court on March 20, 2026 and May 20, 2026.

In an earlier opinion issued on August 6, 2026, the Court resolved the Fifth Amendment claims raised in Cruz's motion, granting them in part and denying them in part. *See United States v. Cruz*, No. 23-CR-159 (NRM), 2026 WL 2265572, --- F.Supp.3d ---- (E.D.N.Y. Aug. 6, 2026).

In this opinion, the Court resolves Cruz's remaining Fourth Amendment claims challenging the admissibility of the evidence seized pursuant to the August

23, 2021 warrant and the April 13, 2023 search of Cruz's cell phone. The Court issued an oral ruling on these claims at a conference with the parties on September 3, 2026. This opinion memorializes that ruling.

For the reasons outlined below and as stated on the record on September 3, 2026, Cruz's motion to suppress the contents of electronic devices pursuant to the 2021 warrant and the fruits of the 2023 search of his cell phone is denied.

## FACTUAL BACKGROUND

The Court resolved Cruz's Fifth Amendment claims in a prior written opinion. The factual record laid out in that opinion is incorporated by reference here. *See Cruz*, 2026 WL 2265572 at *1–8. Those findings of fact were based on the exhibits offered by the parties through their briefing on the motion to suppress as well as the testimony and evidence adduced at the *Franks* hearing held on April 30, 2026. *See* Dkt. Order dated Apr. 30, 2026; Hr'g Tr. dated Apr. 30, 2026 ("Hr'g Tr.") at 10:14–19:3, ECF No. 57.

## PROCEDURAL BACKGROUND

Cruz was indicted on April 11, 2023 on nine counts of sexual exploitation of a child under 18 U.S.C. § 2251(a) and one count of possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), ECF No. 1. The indictment was unsealed on April 13, 2023, the same day Cruz was arrested, ECF No. 3. Cruz pled not guilty to all counts and was released on bond. ECF No. 4.

Cruz filed the instant motion to suppress on October 27, 2025, ECF No. 41, the government filed its opposition to the motion on December 10, 2025, ECF No. 44, and Cruz filed his reply on January 21, 2026, ECF No. 47.

After an initial conference with the parties and upon further review of the parties' submissions, the Court concluded that it would hold a limited evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) as to certain issues raised in Cruz's Fourth Amendment claims, and that it would separately hold oral argument on Cruz's Fifth Amendment claims. Dkt. Order dated Mar. 19, 2026. The Court held oral argument on the Fifth Amendment claims on March 20, 2026, Min. Entry dated Mar. 20, 2026, and held an evidentiary hearing relating to the Fourth Amendment claims on April 30, 2026, Min. Entry dated Apr. 30, 2026. The Court thereafter heard oral argument on the Fourth Amendment claims on May 20, 2026. Min. Entry dated May 20, 2026.

## DISCUSSION

### I. August 23, 2021 Warrant

Cruz first moves to suppress the contents of the electronic devices seized and searched pursuant to the August 23, 2021 warrant. Cruz claims the warrant lacked probable cause, failed to identify with particularity the electronic devices agents were authorized to seize and search, and was unconstitutionally overbroad. The Court disagrees.

More specifically, Cruz argues that FBI Special Agent Elizabeth Jensen ("Agent Jensen") made material omissions or misstatements in the warrant

application such that evidence seized pursuant to the warrant must be suppressed under *Franks*. ECF No. 41 at 11–16. Cruz also contends that the August 23, 2021 warrant lacked particularity and was overbroad in that it authorized a search of the entire townhouse shared by Cruz's multimember family, rather than restricting law enforcement's search authority to the basement apartment where Cruz lived with his sons.

### A. Agent Jensen did not intentionally misrepresent or omit material facts in her warrant affidavit, nor did she exhibit a reckless disregard for the truth of her statements

The Fourth Amendment commands that "no warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched[] and . . . things to be seized." U.S. Const. Amend. IV. Probable cause exists when all the available facts, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). In the context of a search conducted pursuant to a judicial warrant, a court must confine its review to the information provided "within the four corners of a written affidavit." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (quoting *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006)). Reviewing courts give "substantial deference to a finding of an issuing judicial officer that probable cause exist[ed]" to support the warrant, addressing only if the magistrate's determination rested on a "substantial basis." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (citation modified).

Even if a warrant affidavit is sufficient on its face, a court may invalidate it if the law enforcement agent who submitted the warrant intentionally or recklessly omitted facts material to a judge's determination of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The law does not demand that an officer applying for a warrant present the magistrate judge with every arguably exculpatory fact, so long as the officer does not "omit circumstances that are critical" to the magistrate judge's evaluation of probable cause. *Walczyk v. Rio*, 496 F.3d 139, 161 (quoting *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994)).

The test outlined in *Franks* has two prongs, both of which must be satisfied before suppression is permitted. First, "the claimed inaccuracies or omissions [must be] the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000)). "[T]he reviewing court must be presented with credible and probative evidence that the omission of information . . . was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (quoting *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003) (citation modified). Second, "the alleged falsehoods or omissions [must have been] necessary to the issuing judge's probable cause [] finding." *Rajaratnam*, 719 F.3d at 146 (citation modified) (quoting *Canfield*, 212 F.3d at 717–18).

The Court finds that Cruz's claim fails because, even assuming *arguendo* that the omissions he cites were material, Agent Jensen lacked the requisite mental state

to warrant suppression under *Franks*. Specifically, after hearing Agent Jensen's testimony, and considering her demeanor and the credibility and consistency of her answers in light of the record as a whole, the Court finds that she did not act with either the intent to mislead then-Magistrate Judge Roanne L. Mann about the results of her investigation, nor with reckless disregard to whether the information she did provide was misleading.

Cruz's argument as to materiality, and to Agent Jensen's mental state, turns primarily on her omission from the warrant affidavit of information contained in an NYPD DD-5, ECF No. 49-1, prepared during the initial investigation into the underlying offenses, which indicated that Cruz's brother, William Quinonez ("Quinonez"), had said at least once, and possibly more than once, to NYPD detectives who interviewed him that the -1304 number used to communicate with the minor victims at issue was "his." Oral Argument Tr. dated May 20, 2026 ("Oral Argument Tr.") at 39:12–24, ECF No. 61; *see also* NYPD DD-5, ECF No. 49-1. As the Court explained at the outset of the *Franks* hearing, a hearing was appropriate because, on its face, the DD-5 — which was not mentioned anywhere in the warrant affidavit — appeared to be in tension with Agent Jensen's statements throughout the affidavit that Cruz was, in her words, "the user" of the -1304 phone. The Court's concern specifically was rooted in the possibility that it might have been material to Judge Mann that someone other than Cruz answered "yes" when asked by investigators if the number was "his," and that it would have raised serious questions in Judge Mann's mind regarding whether Quinonez was the actual user of the phone, or

whether there was sufficiently conflicting evidence of multiple users as to undermine probable cause as to Cruz specifically.

After hearing from Agent Jensen, however, the Court has far more context for the decision she made to omit the specific DD-5 reference from her affidavit and why she characterized the information available to her as she did. While it would have been far better practice for her to include the specific information in the DD-5, and thus to allow the magistrate judge to explore any resulting questions or concerns directly at the time of the warrant application, the Court concludes that, first, she had a reasonable basis to believe that probable cause existed as to Cruz specifically; second, that she had a reasonable basis to believe that Quinonez's association with the phone was far more tangential than Cruz's; and third, that she reasonably believed that the information she did include in her warrant application was sufficient to establish probable cause as to Cruz, without intending to or recklessly omitting material information about Quinonez's connections to that same number that might have led to a different conclusion.

At the evidentiary hearing on April 30, Agent Jensen testified that she was, indeed, aware of the DD-5 before she filed the warrant application, Hr'g Tr. at 45–47, ECF No. 57, but that after further investigation, she concluded that Cruz, not Quinonez, was the primary and perhaps exclusive user of the -1304 phone. This conclusion was based on several factors. First, she reviewed T-Mobile user records which showed multiple phone numbers on the same account in Quinonez's name, and which specifically indicated that the -1304 was a "secondary" number. In her

experience, this meant that someone else besides the primary listed subscriber (namely, Quinonez) used that phone number. *Id.* at 35–36, 48:1–9. Agent Jensen believed the DD-5 was consistent with what she told Judge Mann: that the -1304 number was "associated with" Quinonez. *Id.* at 56:11–18. Again, while it would have been far better practice for her to explain that in more detail, rather than using a general, passive term like "associated with," the Court does not find that Agent Jensen intended to or recklessly obscured the information in the DD-5 from the magistrate judge when she used that phrasing.

In other words, the Court credits Agent Jensen's testimony at the April 30 hearing that she believed her characterization in the warrant affidavit that the -1304 number was "associated with" Quinonez was accurate, and that she had independent grounds to believe that there was probable cause that Cruz was the "user" of that number. The T-Mobile records show that the -1304 number was a part of Quinonez's account, which supports Agent Jensen's characterization of the number as "associated with" Quinonez. The Uber, DSS, and DOE records that Agent Jensen testified about at the April 30 hearing provided additional information tending to show that Cruz was the user of that number, notwithstanding its association with Quinonez.

This is so notwithstanding the fact that those records did not contain dates that would indicate at what point in time the -1304 number was used by Cruz. The fact that multiple records, from both public agencies and a private corporation, indicated a direct connection between the -1304 number and Cruz provided her with

enough information to believe that her statements in the warrant application were accurate and that the warrant to search for the phone associated with the -1304 number as belonging to Cruz was supported by probable cause. The Court also notes that Agent Jensen made efforts to contact the NYPD officers who had spoken with Quinonez and prepared the DD-5, but that these investigations were unsuccessful because one of the officers could not be located and the other had only partial recollection of the interview with Quinonez. *Id*. at 48–50.

Overall, then, Agent Jensen's investigation as to the user of the -1304 phone was reasonable, even if it did not uncover the traffic incident reports from more than a decade ago (which the defense presented as an exhibit at the hearing) which revealed that Quinonez had provided the -1304 number as his own contact number to the police in 2002 and 2010. Nor is the fact that Agent Jensen did not seek IP address information, toll records, or cell site data prior to completing the warrant affidavit fatal to probable cause for the warrant. An investigation prior to submitting a warrant affidavit does not "have to be conclusive or even perfect to give rise to probable cause." *Medina v. Stevens*, No. 21-CV-1964 (BMC), 2024 WL 4467189, at *6 (E.D.N.Y. Oct. 10, 2024), aff'd, No. 24-2968, 2025 WL 3000875 (2d Cir. Oct. 27, 2025). Ultimately, the fact that Agent Jensen did not specifically seek out or have this additional information at the time she filed the warrant application does not mean that she did not have a good faith basis to represent to the magistrate judge, based on the considerable additional information she did have, that there was probable cause to believe that Cruz was the user of the -1304 phone in April 2021.

In sum, the Court finds that Agent Jensen did not act with either an intent to mislead the magistrate judge, nor with a reckless disregard for the truth, when she swore out her affidavit in support of the warrant for Cruz's cell phone and associated devices. For that reason, Cruz's motion to suppress under *Franks v. Delaware* is denied. Accordingly, the Court needs not and does not reach the government's alternative arguments in defense of the warrant, namely (1) that Agent Jensen's omission of the DD5 information was not material, because even if it had been disclosed, there was sufficient probable cause to search the residence that Cruz and Quinonez shared and to seize the -1304 phone and any devices associated with that phone's user or users; and (2) that Cruz lacks standing to bring this Fourth Amendment challenge because he has not submitted a sworn declaration attesting to his privacy interest in these devices.

### B. Agent Jensen's investigation into whether Cruz lived in a single-family or multi-family dwelling was reasonable

The Warrant Clause further "requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). These are distinct but related concepts. A reviewing court must determine whether the extent of the search contemplated by the warrant is confined, as it must be, to those "places" and "things" for which the government has shown probable cause. *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013). It must also consider whether the warrant was particularized enough on its face to cabin executing officers' discretion and prevent a general search. *Id.* (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)).

As a general rule, in the context of multi-unit dwellings, a facially valid warrant must specify the particular apartment or other unit within the dwelling to be searched. *Maryland v. Garrison*, 480 U.S. 79, 85 (1987); *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011). "In the absence of a probable cause showing as to all the living units . . . a search warrant directed at a multiple-occupancy structure will ordinarily be held invalid if it describes the premises only by street number or identification common to all the subunits." *Clark*, 638 F.3d at 95 (quoting 2 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 4.5(b) (4th ed. 2004)). More specifically, "[i]f the officer [who sought the warrant] knew, or should have known, that the building was a multi-occupancy structure, the warrant must specify which unit is to be searched." *United States v. Wiggins*, 298 F.R.D. 75, 79 (E.D.N.Y. 2014). Among the factors that courts have used to evaluate if a premises is a separate residence are the following: "multiple doorbells; separate utilities; multiple mailboxes; separate kitchens and bathrooms for each unit; designations on the entry to each unit indicating that it is recognized, at least by the occupants, as being a separate dwelling; and physical separation between units that restrict access by others." *United States v. Barsalou*, 24-cr-00135, 2026 WL 83893, at *6 (D. Vt. Jan. 12, 2026) (citing *United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994)).

Here, Cruz does not argue that Agent Jensen actually knew that Cruz lived in a separate unit in a multi-family residence and withheld that information from the magistrate judge. Oral Argument Tr. at 49–50. Instead, he argues that she should

and would have learned that fact if she had done the reasonable investigation that the Constitution requires before filing the warrant application.

Specifically, Cruz argues that Agent Jensen's investigation was unreasonable because, *inter alia*, (1) she did not conduct sufficient physical surveillance of Cruz's residence, which would have revealed his use of a separate entrance, *id*. at 35–36, 41, and (2) it did not lead her to various, readily obtainable DMV and ACRIS records which would have affirmatively indicated that the residence was a multi-family dwelling. He also argues Agent Jensen should have known that additional measures were required because, among other things, she was aware that multiple adult individuals with different last names resided at the house, *id*. at 41–42, 46.

At oral argument, Cruz's counsel underscored what they submitted were the close parallels between this case and Judge Weinstein's decision in *Wiggins*, in which the court found a *Franks* violation when an officer incorrectly represented that a multi-family dwelling was a single-family dwelling. Oral Argument Tr. at 25, 45–46. But this case is distinguishable from *Wiggins* (as well as the other cases relied on by the defense). Here, the public record checks that Agent Jensen undertook as part of her investigation did not reveal any indications that the home was a multi-family dwelling; in *Wiggins*, by contrast, Judge Weinstein relied heavily on the fact that the Accurint report that the detective actually reviewed should have affirmatively put him on notice that multiple families lived in multiple units at the home. 298 F.R.D. at 78–80. Judge Weinstein also found that proper physical surveillance would have revealed (1) different families using different entrances to different units and (2) two

different utility meters on one side of the house. *Id.* at 80. In *Wiggins*, the police officer should have taken further investigative steps because "the detective had already acquired clear signs that the house was a multi-family residence." *Id.* Agent Jensen had no such affirmative indications in this case.

In addition, as the government notes, it is undisputed that the Cruz/Quinonez home had only one doorbell, one mailbox, one utility bill, and one utility meter at the residence. Oral Argument Tr. at 52. The physical surveillance done by Agent Jensen and her colleagues, documented in the FBI Form 302 dated July 13, 2021, also revealed no visible side door. Moreover, USPS records, which Agent Jensen did obtain and review, did not indicate there were multiple units at the residence.

In addition, the NYC Department of Buildings records indicate that the address was listed as a single-family home for tax purposes. At the hearing, Cruz highlighted that the Department of Buildings records did include a caveat, that the reader should "Please note. The Department of Finance's building classification information shows a building's tax status which may not be the same as a legal use of the structure. To determine the legal use of a structure, research the records of the Department of Buildings." Gov't Ex. 3-A, ECF No. 64-8; Hr'g Tr. at 120–21. However, this boilerplate language alone did not impose an affirmative duty on Agent Jensen to conduct that additional research, nor does it render the conclusion she reached based on her entire investigation constitutionally unreasonable. This case is in certain respects akin to *Conklin v. Morris*, where "other than a Certificate of Occupancy, which [the officer] did not review, nothing suggested the Premises was a

multi-family home." No. 18-CV-3805 (PKC) (CLP), 2022 WL 4640238, at *8 (E.D.N.Y. Sep. 30, 2022); *see also id.* at *8 (citing other cases in which courts found similar investigations to be constitutionally adequate).

Courts tend to reject "attempts to impose upon the [g]overnment a checklist that must be adhered to in all investigations," and instead look to "the reasonableness of law enforcement's total inquiry." *United States v. Fennell*, 496 F. Supp. 2d 279, 282–83 (S.D.N.Y. 2007). Here, the Court agrees with the government that the totality of Agent Jensen's inquiry was not unreasonable in its nature or scope. It included at least one instance of physical surveillance and a series of public record checks, none of which produced any affirmative indication that the residence was a multi-family dwelling. It was thus reasonable for Agent Jensen to represent the residence in the warrant affidavit as she did: that is, as a single-family dwelling where it appeared that multiple members of an extended family lived together. This characterization, and the information that Agent Jensen presented on that point in the affidavit, was sufficient for Judge Mann to ask further questions of the agents and/or require additional follow-up before signing the warrant if she believed that doing so was necessary or appropriate.

The government argues, in the alternative, that the agents' failure to inform Judge Mann that Cruz lived in a separate basement unit would not require suppression of the evidence in any case, because the only consequence of that disclosure would have been the issuance of a more limited warrant authorizing the search of his basement apartment only, which is the part of the home from which the

-1304 phone and Cruz's other devices were recovered in. Because Cruz's motion is denied on the grounds explained above, the Court does not reach the government's alternative argument.

C. **Consent Search of Cell Phone on April 13, 2023**

Cruz also moves to suppress the fruits of a search of a different cell phone ending in -4708 ("the -4708 phone"), undertaken with his purported consent at the FBI's New York Office following his arrest on April 13, 2023, on the ground that he did not knowingly and voluntarily consent to the search. Cruz argues that his written consent was invalid because (1) his consent was tainted by an alleged *Miranda/Seibert* violation and (2) the government interpreter at the interview translated the agent's request to "search" Cruz's phone into a request to "see" Cruz's phone. ECF No. 41 at 34–37. Cruz's motion to suppress the search of this phone is also denied.

First, as outlined in the Court's written order on Cruz's Fifth Amendment claims, there was no *Seibert* violation that would render Cruz's consent to search his phone invalid, because the passage of time and change in locations sufficiently cured the *Miranda* violation that tainted the first interrogation at Cruz's home. *See* ECF No. 66 at 41–44; *Cruz*, 2026 WL 2265572 at *17–18.

Second, under the totality of circumstances, the record indicates that Cruz's consent to search the -4708 phone was voluntary. Whether consent was "voluntary" is a "question of fact to be determined from the totality of all the circumstances." *United States v. Smith*, No. 24-CR-688 (JPO), 2025 WL 2089330, at *1 (S.D.N.Y. July

25, 2025) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). "The government has the burden of proving, by a preponderance of the evidence, that a consent to search was voluntary." *United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004).

Cruz asserts that his consent was not voluntary because there were defects in the officers' Spanish-English translation of the requests for consent and in how they listed the devices on the consent form. For example, Cruz argues that when he was given the form to sign, Agent Thompson's request to "search" the phone was actually translated into Spanish as a request to "see" or "look at" his phone, such that he did not understand the full scope of the consent he purportedly gave when he signed the form after that.

Here, the record as a whole establishes that Cruz was, at that time, capable of understanding the nature and scope of consent he gave the agents. During the agents' April 13, 2023 interrogation, after advising Cruz of his *Miranda* rights, the agents asked him several times whether they had his permission to examine the -0478 phone; Cruz supplied the passcode to the -0478 phone; and Cruz not only gave his verbal consent for the agents to view the contents of the phone, but also signed a written consent form that had been translated into Spanish. Accordingly, the government has met its burden of proving that Cruz's consent to search the -0478 phone was freely given, and the search and subsequent forensic examination of the phone were lawful.

## CONCLUSION

For these reasons, Cruz's motion to suppress the contents of the electronic devices seized and searched by the government pursuant to the August 2021 warrant and incident to his arrest in April 2023 is denied.

**SO ORDERED.**

Dated: October 7, 2026
Brooklyn, New York

*/s/ Nina R. Morrison*
Nina R. Morrison
United States District Judge